**UNITED STATES of America, Plaintiff,**

v.

**Gregory WILLIAMS, Defendant.**

**No. 99–33 (TFH).**

United States District Court, District of Columbia.

Nov. 24, 1999.

---

AUSA Adam Rosman, U.S. Attorney's Office, Washington, DC, for plaintiff.

Billy Ponds, Washington, DC, for defendant.

### *MEMORANDUM OPINION*

THOMAS F. HOGAN, District Judge.

Pending before the Court is Defendant Gregory Williams' Motion for a New Trial based upon the newly discovered evidence that Detective Johnny St. Valentine Brown, a witness at Mr. Williams' trial, falsely represented his credentials. Upon careful consideration of the Defendant's Motion, the Government's Opposition, the Defendant's Reply, the arguments presented at the October 4 hearing, the Government's Post–Hearing Filing on the results of their review and evaluation of Detective Brown's qualification testimony, and the entire record in this case; the Court will deny Defendant's Motion for New Trial.

#### Background

On December 22, 1998, Mr. Williams was arrested and charged with Possession with Intent to Distribute ("PWID") Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). One month later, on January 21, 1999, the Grand Jury indicted Mr. Williams for the same crime. A jury trial began in this Court on May 18, 1999. During the trial, the government offered Metropolitan Police Department ("MPD") Detective Brown as an expert in the distribution, packaging, and price of narcotics in the District of Columbia. During his qualification testimony, Detective Brown said

that he was a "Board certified pharmacist," who could "receive, maintain[,] compound, and dispense narcotic as well as non-narcotic substances per prescription." This Court accepted Detective Brown as an expert without objection, and he testified at trial in the proffered areas. The trial ended on May 24, 1999, when the jury found the defendant guilty as charged.

On August 20, 1999, the defendant filed a Motion for New Trial based on newly discovered evidence, pursuant to Fed. R.Crim.P. 33. In this Motion, Mr. Williams claimed that on June 22, 1999, Detective Brown lied about his educational credentials during a civil deposition. Specifically, during the deposition, Detective Brown said that he held a bachelor's degree, master's degree in pharmacology, and doctorate of pharmacology, all from Howard University; according to the plaintiff in the civil suit, Detective Brown did not hold such degrees In Mr. Williams' Motion for New Trial, he argued that, based on the alleged perjury in this civil deposition, Detective Brown perjured himself before this Court when he claimed that he was a "Board certified pharmacist," who could "receive, maintain[,] compound, and dispense narcotic as well as non-narcotic substances per prescription."

On September 29, 1999, the government filed an opposition to the defendant's motion. In its opposition, the government argued that, even assuming that Detective Brown's "Board certified certification" claims were false, the defendant was not entitled to a new trial. The United States also informed the Court that the United States Attorney's Office was investigating Detective Brown's claims concerning his credentials as an expert witness.

On October 4, 1999, this Court held a hearing and, following argument, took the matter under advisement. The Court directed the United States to review Detective Brown's trial testimony regarding his qualifications, evaluate the veracity of that testimony, and report to the Court by November 8, 1999. In its Post–Hearing Filing in response to the Court's direction that it report to the Court on the result of its further investigation, the United States reported that Detective Brown is not a "Board certified pharmacist" and is not licensed to receive, maintain, compound, or dispense narcotic or non-narcotic substances per prescription. Although Detective Brown's academic credentials were not testified to at Mr. Williams' trial, the government also reported that Detective Brown does not hold a bachelor's, master's degree in pharmacology, or a doctorate of pharmacology from Howard University.

### Discussion

A defendant is generally entitled to a new trial under Rule 33 based on newly discovered evidence only if he satisfies all of the following conditions: (1) the evidence must have been discovered since the trial; (2) the party seeking the new trial must show diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) of such a nature that it would probably produce an acquittal. *United States v. Lafayette*, 983 F.2d 1102, 1105 (D.C.Cir.1993) (citing *Thompson v. United States*, 188 F.2d 652, 653 (D.C.Cir.1951)) ("the *Thompson* standard"). However, a different standard may apply when the newly discovered evidence is based on the discovery that a government witness allegedly perjured himself at trial. Under this more lenient standard, a new trial cannot be granted unless: (1) the Court is reasonably well satisfied that the testimony given by a material witness is false; (2) that without [the false testimony] the jury might have reached a different conclusion; and (3) that the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial *See United States v. Mangieri*, 694 F.2d 1270, 1286 (D.C.Cir.1982) (citing *Larrison v. United States*, 24 F.2d 82 (7th Cir.1928)) ("the *Larrison* standard").

■ The D.C. Circuit has not resolved the issue of which of these two standards applies to situations where a Rule 33 motion is based on the discovery that a government witness allegedly perjured himself at trial. *See United States v. Hernandez*, 780 F.2d 113, 122 n. 15 (D.C.Cir.1986); *Mangieri*, 694 F.2d at 1286. The Court need not decide that issue today since Mr. Williams cannot meet the threshold requirements of even the more lenient standard in this case.

The newly discovered evidence provided by the defendant consists or a July 23, 1999 *Washington Post* article which reported that on June 22, 1999, Detective Brown lied about his academic credentials during a civil deposition. Although this evidence has later been confirmed and the Court considers this perjury to be of a very serious nature, there is no evidence that it prejudiced the outcome of Mr. Williams' case. Detective Brown did not testify about his academic credentials at Mr. Williams' trial. He did falsely testify that he was a Board certified pharmacist and that he was qualified to receive, maintain, compound, and dispense narcotic and non-narcotic substances per prescription. However, there is no reason to believe that absent Detective Brown's false statements, the jury "might have reached a different conclusion." Therefore, Mr. Williams cannot meet the second requirement of the more lenient *Larrison* standard.

At trial, the government called three fact witnesses: (1) Metropolitan Police Department ("MPD") Investigator Homer Littlejohn; (2) MPD Officer Donald Leach; and (3) MPD Officer Anthony Manley. They testified that on December 22, 1998, during a search incident to an arrest, Officer Leach removed from the defendant's pocket a ziplock bag which contained 87 smaller ziplock bags, each of which contained individual "hits" of heroin.[1] They further testified that moments later, after searching the car, Investigator Littlejohn found under the driver's seat a large plastic bag with a medium-sized ziplock bag inside; inside the medium-sized ziplock bag, he found six smaller ziplock bags, which in turn contained 638 smaller ziplock bags, each of which contained individual "hits" of heroin.[2] After seizing the heroin from the car, Inspector Littlejohn testified that he also found a cellular telephone and pager, as well as the defendant's check cashing card, and other paperwork bearing the defendant's name.

Following the testimony of Officers Littlejohn, Leach, and Manley, the United States called Christopher Chang, a chemist employed by the Drug Enforcement Administration. Mr. Chang testified about receiving and analyzing Government Exhibit 2 (the 87 ziplock bags) and Government Exhibit 3 (the 638 ziplock bags) in DEA and MPD "heatseal" bags. His analysis showed that the seized ziplock bags contained heroin hydrocholoride and that the total weight was 85.8 grams. Following Mr. Chang's testimony, the United States called Detective Brown, whom the government offered as an expert witness in the use, distribution, and packaging of narcotics in the District of Columbia. Prior to offering expert testimony, Detective Brown testified about his experience on the MPD and his specialized training in narcotics enforcement. With respect to his experience, Detective Brown testified that he was a 29–year veteran of the MPD, that during his tenure he worked in various branches of the police department, including intelligence, Narcotics and Special Investigations Division ("NSID") for the last 25 years, and that during his tenure at NSID he had been involved in approximately 2500 narcotics investigations involving heroin, cocaine, marijuana, LSD, speed, and PCP. Detective Brown estimated that he had made approximately 800 "undercover" drug purchases during his tenure in NSID, and testified that he

---

1. DEA analysis later showed that the 87 bags contained a total of 10.5 grams of heroin.

2. DEA analysis later showed that the 638 bags contained a total of 75.3 grams of heroin.

kept up-to-date on the use, packaging, and sale of narcotics in the District by "debriefing" drug users, talking with current undercover officers, and attending seminars offered by the DEA, United States Department of Health and Human Services, and the National Institute on Drug Abuse.

With respect to his specialized training, Detective Brown testified that he had been a "resident narcotic expert" for the MPD since 1980, and had testified on narcotics-related matters approximately 4,000 times in twenty-six jurisdictions, including the United States District Court for the District of Columbia, the Superior Court of the District of Columbia, and Courts of the Commonwealth of Virginia and the State of Maryland. Detective Brown also testified that he had acted as a consultant to the United States Congress, specifically to the Select Committee on Narcotics Abuse and Control, and that he had been an instructor at the MPD training academy since 1975. Finally, at the end of his qualification testimony, Detective Brown said that, "My knowledge of the drug field is further enhanced by the fact that I am also a Board certified pharmacist. I receive, maintain[,] compound and dispense narcotic as well as non-narcotic substances per prescription."

The government then offered Detective Brown as an expert in (1) the distribution and use of narcotics; (2) the packaging of narcotics for street-level distribution; (3) the manner in which narcotics dealers distribute narcotic substances in the District of Columbia; (4) the price for which narcotics are sold; and (5) procedures for safeguarding drug evidence. The Court accepted Detective Brown as an expert in those fields without defense objection.

Detective Brown testified first about the procedures used by the MPD and DEA to ensure the integrity of narcotic evidence. He then testified about the contents of Government Exhibits 2 (87 ziplock bags of heroin) and 3 (638 ziplock bags of heroin) and their corresponding DEA lab analysis reports. He specifically noted the weight and purity of the seized drugs, as reflected in the DEA–7s. Detective Brown then testified about "bulk" versus "street level" distribution of heroin, common forms of street-level packaging, and typical methods of heroin use, including the weight of a single "dose." Based on his expertise, Detective Brown testified that a typical user would "use on average two to three bags a day [of heroin]." Detective Brown then confirmed that the packaging in Government Exhibits 2 and 3 was consistent with packaging typically used for street distribution of heroin. He stated that the heroin in Government Exhibits 2 and 3 had a street value of approximately $1,740 and $12,760, respectively. Finally, Detective Brown testified that a typical heroin user would usually possess two or three ziplock bags of heroin and, referring to Government Exhibits 2 and 3, said that a typical user would not purchase that amount of heroin at one time.

It is clear from this testimony that Detective Brown's expertise is based largely on his practical "street" experience rather than his formal training or academic credentials. Being a Board certified pharmacist is irrelevant to knowing how heroin is distributed on the streets of the District of Columbia, which was the focus of the Detective's testimony. Thus, assuming the jury had never heard about Detective Brown's Board certification and ability to receive, maintain, compound and dispense narcotic as well as non-narcotic substances per prescription, it is likely that they would still have credited his testimony since it was supported by twenty-five years of practical experience as an MPD detective.

Moreover, even assuming that the jury had discounted Detective Brown's testimony, the evidence of the defendant's intent to distribute was compelling. The defendant was caught with 725 small ziplock bags of heroin worth almost $15,000 on the street. Therefore, in light of the independent evidence establishing the defendant's

**114**

guilt, this Court cannot find that the jury might have reached a different verdict even if it had discounted Detective Brown's testimony. *Cf. Doepel v. United States*, 434 A.2d 449, 459 (D.C.) (holding that defendant is not entitled to a new trial based on newly discovered evidence that FBI serologist lied about his academic credentials where substantial independent evidence established defendant's guilt), *cert. denied*, 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483 (1981).

**Conclusion**

Perjury is a serious matter and should not be taken lightly. There may be cases in which Detective Brown's false testimony warrants a new trial. However, in this case, the Court cannot find that the jury might have reached a different conclusion if Detective Brown had not falsely testified that he was a "Board certified pharmacist" and that he receives, maintains, compounds, and dispenses narcotic as well as non-narcotic substances per prescription. Detective Brown's testimony in this case was based almost exclusively on his extensive law enforcement and street experience. Moreover, the powerful physical evidence in this case—over 700 ziplock bags of heroin—was sufficient standing alone to convince a jury that this defendant intended to distribute drugs. Therefore, Defendant's Motion for New Trial is denied. An order will accompany this Opinion.

**ORDER**

In accordance with the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendant's Motion for New Trial is **DENIED.** It is further

**ORDERED** that this case is dismissed with prejudice.