**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Raymond A. JONES Jr., Defendant.**

**No. 98–CR–359.**

United States District Court,
District of Columbia.

Dec. 13, 1999.

Judy Lynn Woodall, Regan Associates, Chartered, Washington, DC, for Raymond A Jones, Jr., defendant.

Richard Earl Dominguez, II, Adam Lawrence Rosman, U.S. Attorney's Office, Washington, DC, Richard Edwards, U.S. Attorney's Office, Civil Division, Washington, DC, for U.S.

### *MEMORANDUM OPINION ON DEFENDANT'S MOTIONS FOR NEW TRIAL*

SPORKIN, District Judge.

On May 27, 1999, following a three-day jury trial, Raymond A. Jones Jr. was convicted on one count of possession with intent to distribute heroin. This was the second time Jones was tried on this charge, the first trial having ended in a hung jury. At this trial, the government offered expert witness testimony from its "resident narcotics expert" (Tr. 5–26–99 at 3A–3), Detective Johnny St. Valentine Brown. Jones' counsel stipulated to Detective Brown's "qualifications, being a resident narcotics expert qualified as whatever." Detective Brown did not testify at trial about his qualifications.

Following the trial's conclusion, Detective Brown's credentials were questioned in an unrelated matter. Particularly it was learned that Detective Brown, who on many occasions in the past has held himself out as having a degree in pharmacology, was in fact the holder of no such degree. On September 30, 1999, Jones moved for a new trial under Rule 33, arguing that because his conviction rests on Brown's expert witness testimony, which would not have been heard by the jury had it been known that Brown had fabricated

his expert qualifications in the past. Defendant states the interests of justice require a new trial.

## Background

The government's case against Jones consisted of two fact witnesses, Officers Cutler and Garvin, and Detective Brown's expert witness testimony. Officer Cutler testified that on June 16, 1999, he was stationed observing a stairwell at 651 Morton Street, an apartment building in Washington, D.C. Officer Cutler was approximately 100 feet away from the stairwell, and observed the area through binoculars. He testified that he observed Jones make what appeared to be a drug transaction in the hallway by the stairwell. Officer Cutler observed Jones take something from a "stash" (that was later confirmed to contain small ziplock bags of heroin) and exchange it with another man (the "buyer") for U.S. currency. Jones then left the building, leaving the "stash" behind. Officer Cutler testified that he radioed Officer Garvin to detain the buyer, but the buyer (and whatever he may have purchased from Jones) was never located. Officer Cutler directed Officer Garvin to detain Jones, who was arrested outside 651 Morton Street. He did not have any contraband in his possession. Jones did have $25.00 in cash.

Officer Cutler testified that two weeks prior to the incident which forms the basis of the charges in this case, he observed Jones in the hallway of 651 Morton Street. On that occasion, he observed Jones holding a small plastic bag in his hand, talking to a man with currency in his hand. When the two men saw Officer Cutler, they fled the scene. Officer Cutler testified that on May 26, 1998, while in plainclothes, Jones offered something called "Party with the stars" to Cutler. Upon seeing Cutler's police radio, Jones again fled the scene. Cutler testified that "Party with the stars" is a brand name of heroin.

Detective Brown was called by the government as an expert witness on the use, distribution, packaging, and pricing of narcotics in the District of Columbia. Detective Brown was asked to testify about his experiences with the Metropolitan Police Department as a "resident narcotics expert." As noted, defense counsel stipulated to Detective Brown's qualifications. (Tr. 5–26–99 at 3A–2–3).

Detective Brown testified about the weight of the seized drugs, how they were diluted, their brand names, and the use of small ziplock bags for retail distribution. He stated that "Partying with the stars" is a brand name of heroin sold in Washington D.C. He testified that drug dealers rarely carry narcotics on their persons (fearing police detainment or assaults from drug users), but rather use a hidden stash from which to make transactions. Detective Brown also described how typical heroin users would not buy "in bulk" but rather would purchase one or two small bags at a time. Finally, he testified that each of the small bags seized from the stairwell of 651 Morton Street would sell for $20 to $25 on the street. (Tr. 5–26–99 at 3A–9–16).

Jones was convicted on the single count of possession with intent to distribute heroin. Two months later, on July 23, 1999, an article in the Washington Post reported that Detective Brown had resigned from the Metropolitan Police Department "amid allegations that he has lied under oath about his credentials." Bill Miller, *Accused of Perjury, Police Expert Resigns*, Washington Post, July 23, 1999, at B 1. The article relates that in a civil deposition, Brown testified that he had a doctorate in pharmacology from Howard University, and that it was later shown that he held no such degree from that institution. The government has confirmed in a report to the Court that Detective Brown does not hold a bachelor's degree from Howard University, nor a master's or doctorate degree in pharmacology from Howard. The government does not suggest that Brown holds any of those degrees from other institutions.

This Court is familiar with Detective Brown's career as an expert witness. A police officer for over twenty years, Brown has testified in numerous cases as a narcotics expert. While most of his testimony has been on behalf of the government, on a few occasions he has even testified for the defense. Detective Brown has been a witness before this Court on numerous occasions. He is charismatic and his testimony has generally been well received by juries.

### Standard for New Trial—Discovery of New Evidence

■ This Court has discretion to grant a new trial under Rule 33 upon the discovery of new evidence, under the following conditions: (1) the evidence must have been discovered since the trial, (2) the party seeking the new trial must show diligence in the attempt to procure the newly discovered evidence, (3) the evidence relied on is not merely cumulative or impeaching, (4) it must be material to the issues involved, and (5) of such a nature that it would probably produce an acquittal. *United States v. Lafayette*, 983 F.2d 1102, 1105 (D.C.Cir.1993), *citing Thompson v. United States*, 188 F.2d 652, 653 (D.C.Cir.1951). A new trial may also be granted when a government witness delivers false testimony, and the Court is reasonably well satisfied that without that testimony, the jury might have reached a different conclusion, if the witness's false testimony is not discovered until after trial is completed. *United States v. Mangieri*, 694 F.2d 1270, 1286 (D.C.Cir.1982), *citing Larrison v. United States*, 24 F.2d 82 (7th Cir.1928) (the "*Larrison* standard").

■ The evidence that Brown lied in a deposition about his education and expert witness qualifications would certainly have been impeaching of Brown's credibility. More than that, though, the evidence would have kept Brown from taking the stand at all. It is clear to this Court, and the government apparently concedes, that Detective Brown would not have been a witness if government counsel knew that over the years Brown lied about his credentials. The issue that remains is whether Brown's testimony was material.

Brown's testimony filled in all of the gaps of the government's case and was clearly material to the jury's determination. Without Brown's testimony, the independent evidence against Jones is highly circumstantial. Jones' offering of "Party with the stars" to Officer Cutler is damning because Brown identified "Party with the stars" as a brand of heroin. Jones was not caught with drugs in his possession—rather he had $25.00. Possession of U.S. currency is not evidence of a crime in this case without Brown's testimony that a small bag of heroin costs between $20 and $25. Officer Cutler observed Jones receive some amount of currency, but could not testify as to what Jones apparently sold because the buyer (and item sold) were not recovered. Brown's testimony alone allowed the jury to imply that Jones received $25 for the sale of a small bag of heroin. Although Jones was observed in possession of the stash in the stairwell at 651 Morton Street, there was no fingerprint evidence connecting Jones to the heroin. Officer Cutler's two prior run-ins with Jones only evidence an intent to distribute heroin with Brown's expert testimony on the brand names and how the drug trade operates. The Court finds that Brown's testimony was material to Jones' conviction—indeed, the only difference between this trial and the earlier trial that ended in a hung jury was the addition of Brown's expert testimony.

The government maintains that the jury would have reached the same verdict "even if it had substantially discounted Detective Brown's testimony." The government's position here misses the point. The new evidence is not merely that Brown lied under oath in a civil deposition. The true facts discovered, Brown resigned from the police department. Had that evidence been available at the time of Jones' trial, it is inconceivable that Brown would have been offered as a witness by the govern-

ment. Indeed, at oral argument the government conceded this point.

The Court finds that in the interests of justice, for the reasons stated above, a new trial in this matter is required. The Court is mindful of the problem now facing the government in the many cases where Detective Brown gave expert witness testimony on the drug trade in this city. The government is concerned that a grant of new trial in this case may have a precedential effect in those other cases.[1] This Court is permitted only to consider this case, on the facts before it.

The Court notes that Jones filed an earlier motion for new trial in June 4, 1999, before the revelations concerning Detective Brown were published. Jones states essentially that the verdict was against the weight of the evidence, and that the Court erred in the admission of certain evidence under Rule 404(b). The Court has considered these arguments, and the government's opposition, and finds that there is no basis for granting a new trial on the issues raised in that motion, and the Court denies the earlier motion for new trial.

An appropriate order shall issue.

### ORDER GRANTING MOTION FOR NEW TRIAL

This matter comes before the Court on Defendant's motions for new trial. A hearing was held on Jones' motions on October 27, 1999, and the parties' positions were fully briefed and argued. For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendant's motion for new trial, filed on June 4, 1999, is **DENIED;** and it is further

**ORDERED** that Defendant's motion for new trial, filed on September 27, 1999, is **GRANTED.**

SO ORDERED.

---

1. My esteemed colleague Judge Hogan just denied a motion for new trial in a case where Detective Brown testified. That holding was expressly limited to the facts of that case, where the remaining evidence was overwhelmingly against the defendant. *See United States v. Gregory Williams,* 77 F.Supp.2d 109 (D.D.C.1999).